UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DINA HURNEVICH,

        Plaintiff,

v.                                                                          Case No. 10-10278
                                                                        Honorable Denise Page Hood

ARVINMERITOR, INC.,
a foreign corporation,

        Defendant.

                                                  /

## ORDERING GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

       This is an employment discrimination case. Now before the Court is Defendant's Motion for Summary Judgment, filed October 7, 2011. The matter has been fully briefed and the Court has heard oral arguments. The matter is now appropriate for determination. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

**II.    BACKGROUND**

       Plaintiff, Dina Hurnevich, alleges that she was terminated from her position based on gender. She filed the present action on January 20, 2010. In her Complaint, she alleges sex/gender discrimination in violation of the Elliot Larsen Civil Rights Act (Count I); sex/pregnancy discrimination in violation of the Elliot Larsen Civil Rights Act (Count II); violation of the Equal Pay Act (Count III); and violation of the Family Medical Leave Act (Count IV).

Plaintiff began as the Manager of Finance Process Improvement in October 2006 and was promoted to Director of Global Cash and Process Improvement in May 2007. Plaintiff received favorable reviews as to her job functions. In May 2008, ArvinMeritor announced its decision to spin off its light vehicle systems division. Plaintiff was reassigned to the proposed spinoff Light Vehicle Services ("LVS") in May 2008 as Assistant Treasurer of Cash Management. The letter informing Plaintiff of her reassignment stated that "[f]or all compensation and benefits related matters, you will remain an employee of ArvinMeritor until the effective date of the spin." Plaintiff alleges that she was told that she would remain in the position as Director of Global Cash and transition Ken Andrysiak, who would take over her responsibilities at ArvinMeritor, until LVS actually spun off. Plaintiff expressed some concerns regarding this move. She was offered a $30,000 retention bonus in June 2009. The proposed spin-off reorganization would send two female directors and the one African America director to LVS, leaving only one female director.

In early September 2008, Plaintiff informed Defendant that she was pregnant and would require 12 weeks of family medical leave. On September 26, 2008, an email circulated among Defendant executives with a list of employees that were considered "redundant." Plaintiff's name was included on this list. In October 2008, Plaintiff alleges that she was informed that she may be transitioned to another department when she returned from family medical leave. Defendant alleges that Plaintiff was never told that a job would be available upon her return. Plaintiff began her leave in December 2008.

In January 2009, Defendant announced that the spin-off would not occur. A week before Plaintiff was scheduled to return from family medical leave, her supervisor informed her that there was no position for her. Plaintiff's supervisor checked with the CFO to see if a position

2

was available for Plaintiff and was told that there was no position. Plaintiff's supervisor told her that it was a bad time for Plaintiff to have been on leave.

Ninety-three employees were laid off as a result of a reduction in force period from October 2008 until March 2009, including Plaintiff and one other director position. Instead of removing the man that filled Plaintiff's old position, Defendant retained him. Plaintiff alleges that she has more experience than the man that maintained her old position. She further alleges that other transferred staff members were given new positions.

In late 2009, Plaintiff's former position reopened, but an outside male candidate was chosen to fill the position.

### III.   ANALYSIS

#### A.   Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be granted if the movant shows there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The movant has the burden of showing that summary judgment is appropriate. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Further, the court must consider evidence in the light most favorable to the nonmoving party. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). Summary judgment will be granted "against a party, who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corporation v. Catrett*, 477 U.S. 317, 391 (1986). A material fact is genuine, and therefore the case is not appropriate for summary judgment, if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 248 (1986).

#### B.   Family Medical Leave Act

The Family Medical Leave Act (FMLA) entitles an eligible employee to up to twelve months of leave "because of the birth of a son or daughter . . . and in order to care for such son or daughter." 29 U.S.C. § 2612. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of . . . any right provided" under the FMLA. 29 U.S.C. § 2615(a)(1). The Sixth Circuit has recognized two theories of recovery under the FMLA: 1) the "entitlement" theory stemming from 29 U.S.C. § 2615(a)(1), and 2) the "discrimination" or "retaliation" theory pursuant to 29 U.S.C. § 2615(a)(2). *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008).

Under the entitlement theory, "[q]ualifying employees who return to work within that 12-week period are entitled to be reinstated to their previous position, or 'to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.'" *Edgar v. JAC Prods.*, 443 F.3d 501, 506 (6th Cir. 2006) (quoting 29 U.S.C. § 2614(a)(1)). The relevant inquiry is whether the employer provided leave or reinstated the employee after returning from leave. *Id.* at 507. "The right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the entitlement theory because 'the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation [that] an employee will return to work after the leave ends.'" *Id.* (quoting *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005)).

To make a prima facie case under an entitlement theory, an employee must prove that (1) she was a qualifying employee; (2) the defendant was a FMLA defined employer; (3) she was entitled to leave; (4) she gave notice of intent to take leave; and (5) the employer denied the employee benefits that she was entitled to. *Id.* The employer's intent is irrelevant. *Id.* Furthermore, there must be a causal connection between the employer's violation and the

4

employee's harm. *Id.* at 508.

Under the retaliation theory, an employer is prohibited from retaliating or discriminating against an employee who takes FMLA leave. *Id.* The plaintiff must demonstrate that 1) she engaged in a protected activity by notifying the defendant of her intent to take leave; 2) she suffered an adverse employment action; and 3) there was a causal connection between the exercise of FMLA rights and the adverse employment action. *Edgar,* 443 F.3d at 508.

A claim under either theory supported by circumstantial evidence must be evaluated under *McDonnell Douglass Corp. v. Green.*, 411 U.S. 792 (1973), burden-shifting analysis. *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 315 (6th Cir. 2001). Once the plaintiff has established a prima facie case, the defendant must articulate some legitimate, nondiscriminatory reason for terminating the plaintiff. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff then has the burden of showing that the defendant's reasons are merely a pretext for discrimination. *Skrjanc,* 272 F.3d at 315. "[A] plaintiff may show pretext by demonstrating that the proffered reason (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action." *Huck v. Greenspan*, No. 06-14562, 2009 WL 224682, *24 (E.D. Mich. Jan. 30, 2009) (unpublished). Although temporal proximity may be sufficient to establish a causal connection, it is insufficient to establish pretext. *Id.*

Defendant contends that although Plaintiff's termination and FMLA leave were close in proximity, this alone is insufficient to demonstrate a causal connection. Defendant asserts that Plaintiff was given severance pay and a glowing letter of recommendation. Defendant further notes that Plaintiff's position was identified as redundant two months prior to her taking FMLA leave.

Plaintiff counters that Plaintiff's supervisor Alison Lehmann's statement that it was not a good time to take leave establishes a causal connection. She further argues that she was never transferred to LVS and was entitled to be returned to her former position or a comparable position. Plaintiff contends that Lehmann's statement and Defendant's decision to classify her as redundant two weeks after she announced her pregnancy together demonstrate a causal connection.

A genuine issue of material fact remains as to whether there was a causal connection between Plaintiff's family medical leave and termination. The email naming redundant employees was circulated only a few weeks after Plaintiff announced her pregnancy. Also, there is some question regarding whether Plaintiff was still an ArvinMeritor or LVS employee when she was terminated. The letter transferring her to LVS stated that she remained an ArvinMeritor employee for compensation purposes until the spin off occurred, which it did not. Before Plaintiff informed ArvinMeritor that she was pregnant, Defendant made attempts to keep Plaintiff as an employee, giving her a $30,000 retention bonus. Furthermore, Lehmann's statement that it was a bad time for her to take leave would imply that her leave may have been a contributing factor to Defendant's decision to terminate her employment. Lehmann was a supervisor and likely involved in the decision-making process. A reasonable jury could find that Plaintiff made out a prima facie case under both the entitlement and retaliation theories.

Defendant counters that there was a reduction in force and Plaintiff did not have an absolute right to protection against being discharged while on leave. It asserts that Plaintiff's position was eliminated when the spin-off did not occur. Plaintiff argues that Defendant's reasons are merely pretextual given that there was only one other lay off in the treasury group: a female director in Europe. Plaintiff contends that she was was more qualified for the job than the

outside individual Defendant hired after the position opened again.

Whether Defendant's reasons for terminating Plaintiff are pretextual is also a question for the jury. Defendant argues that it terminated Plaintiff's employment because the company was downsizing. As previously stated there is a question as to whether Plaintiff was an employee of ArvinMeritor when she was terminated. Defendant argues that she was not and that they did not reinstate her at her former position because someone was already in that position doing well. Defendant further argues that it did not rehire her when her position became open because an outside candidate was more qualified. Laying off Plaintiff for economic reasons is a legitimate reason to terminate her employment. However, whether Plaintiff was more qualified for the position than her replacement is a question of fact best left for the fact finder. According to Plaintiff, she was informed that she would remain an ArvinMeritor employee and help to transition her replacement until the spin-off occurred. There is a question as to whether Defendant's failure to reinstate her was based on her alleged lack of qualifications or because she was taking family medical leave. Although an economic decision to terminate Plaintiff is valid, the fact that Defendant did not consider Plaintiff when the position reopened could show that their reasoning was merely pretextual. Defendant is not entitled to summary judgment as to Plaintiff's FMLA claim.

  **C.** **Elliot Larsen Act**

Plaintiff alleges discrimination in violation of both the federal and Michigan Elliot Larsen Civil Rights Act ("ELCRA"). Michigan courts look to federal precedent as guidance in a claim brought under the ELCRA. *Featherly v. Teledyne Industries Inc.*, 486 N.W.2d 361, 364 (Mich. Ct. App. 1992). "[A] plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an

inference of discrimination." *Kline v. TVA*, 128 F.3d 337, 348 (6th Cir. 1997); *see also Hazle v. Ford motor Co.*, 658 N.W.2d 515, 520–21 (Mich. 2001). If the plaintiff is able to offer direct evidence, which is often unavailable, he is not required to go through the burden shifting analysis set forth in *McDonnell Douglas*. *Kline*, 128 at 348. However, if only circumstantial evidence of discrimination is available, the plaintiff must make a prima facie case. *Id.* at 349.

A prima facie case of discrimination under the ELCRA requires evidence that (1) the plaintiff is a member of a protected class; (2) the plaintiff suffered an adverse employment action; (3) the plaintiff was qualified for her position; and (4) that the plaintiff was replaced by a male or treated different than similarly situated males. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).[1] If the plaintiff is able to prove a prima facie case of discrimination, the burden shifts to the defendant to provide some legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802–03.

The only issue in dispute is whether Plaintiff was treated differently than similarly situated males. Defendant argues that Plaintiff is unable to demonstrate that she was treated differently than similarly situated males because she was treated the same as other male employees who had redundant jobs.

Plaintiff has not shown that she was treated differently than a male employee that was similarly situated as her in all relevant respects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). The record tends to show that other male employees were also laid off or terminated from their employment. Plaintiff contends that she was not allowed to go back to her former position. She cites to a portion of her deposition for the proposition that

---

[1] In Michigan, the fourth element is described as either (1) "others similarly situated and outside the protected class, were unaffected by the employer's adverse conduct", *Town v. Mich. Bell Tel. Co.*, 568 N.W.2d 64, 68 (Mich. 1997), or (2) "under the circumstances that give rise to an inference of unlawful discrimination", *Lytle v. Malady*, 579 N.W.2d 906, 914 (Mich. 1998). The Michigan "four-part . . . test is an adaptation of the United States Supreme Court's *McDonnell Douglass* test to prove prima facie case of discrimination." *Id.* at 915, n.19.

her "pregnancy changed the company's perception of her, expected her priorities to change the company's detriment, or caused her to be less highly regarded." But she has not shown that other similarly situated males were allowed to go back to their positions after those duties were taken over by another. Although Plaintiff was not reinstated to her former position when it became open and the position was filled by another male, she has not identified another male employee that was subjected to similar treatment. There is no genuine issue of material fact as to whether Plaintiff is able to demonstrate a prima facie case. Plaintiff's ELCRA claims are dismissed.

### D. Equal Pay Act

Defendant argues that Plaintiff cannot establish an equal pay violation because she and her coworkers were paid based on their experience and previous salary. Defendant asserts that Plaintiff was newly promoted and therefore received a lower rate than her male and female counterparts, but her salary was in range with employees at her pay grade. Plaintiff counters that she was paid significantly less than her male counterparts and Defendant's arguments are unsupported.

An employer is prohibited from paying an employee a lower wage than an employee of the opposite sex for equal work. 29 U.S.C. § 206(d)(1). A prima facie case requires the plaintiff to demonstrate that she was paid a different wage from another employee of the opposite sex for substantially equal work. *Timmer v. Michigan DOC*, 104 F.3d 833, 843 (6th Cir. 1997). Once the plaintiff has made a prima facie case, the burden shifts to the defendant to demonstrate that the lower wage is justified by (1) seniority, (2) merit, (3) the wages were measured by quality or quantity of production, or (4) any factor other than sex. *Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005). To prevail on a motion for summary judgment, the defendant must prove that

gender did not form the basis for the difference in wages. *Id.* Previous salary is a legitimate justification as long as it is not the sole basis for a difference in pay. *Id.*

It is apparent that Plaintiff could make out a prima facie case for discrimination. Defendants rely solely on the fourth justification to explain the difference in Plaintiff's pay to her counterparts. The record shows that Plaintiff came in at a lower rate than her counterparts both male and female. It also shows that Plaintiff was given an approximately $10,000 increase when she started with ArvinMeritor. A female counterpart was given approximately $20,000. A similar salary jump was given to two male counterparts. One male counterpart was paid at the same exact rate as a prior position. The record further demonstrates that her male and *female* counterparts were paid in the $150,000 range. The outside candidate that replaced Plaintiff received an approximately $13,000 salary increase when he began with ArvinMeritor. This is consistent with the other salaries. Defendant notes that the difference in salary was also attributed to the fact that Plaintiff had been recently hired. Plaintiff fails to offer any evidence to show that these justifications are not legitimate. There is no genuine issue of material fact as to whether Plaintiff received a lower wage on the basis of gender. The Court dismisses Plaintiff's Equal Pay Act claim.

IV.   **CONCLUSION**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **[Docket No. 39, filed October 7, 2011]** is **GRANTED IN PART** and **DENIED IN PART**. The Court dismisses Medical Leave Act claim.

**IT IS SO ORDERED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: September 27, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 27, 2012, by electronic and/or ordinary mail.

                                                  S/LaShawn R. Saulsberry
                                                  Case Manager

2:10-cv-10278-DPH-RSW   Doc # 49   Filed 09/27/12   Pg 11 of 11   Pg ID 1156